UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DANIEL E. BALLARD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Civil Action No. 11-1327 (ESH) |
| BRANCH BANKING AND ) | |
| TRUST COMPANY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Daniel Ballard has instituted a class action against Branch Banking and Trust Company ("BBT") because its automatic teller machine ("ATM") lacked an on-machine fee notice, in violation of the Electronic Fund Transfer Act ("EFTA" or "Act"). 15 U.S.C. §§ 1693 *et seq*. Before the Court is his motion to certify a class of consumers who were charged withdrawal fees from the allegedly non-compliant ATM machine. For the reasons explained here, his motion is denied.

## BACKGROUND

The EFTA seeks to ensure that operators of ATMs provide notice to consumers when a fee will be imposed for use of the ATM. *See also* 12 C.F.R. §§ 205 *et seq*. It requires ATM operators to give such notice both "on or at" the machine itself and on the display screen so that the consumer is advised before the transaction is completed. 15 U.S.C. § 1693b(d)(3)(B)(i)-(ii).[1] Section 1693m of the Act creates a cause of action for violation of the fee notice provision, and

---

[1] The Court assumes, for the purposes of this Memorandum Opinion, that both forms of notice are required. *See Dragotta v. W. View Sav.s Bank*, 395 Fed. Appx. 828, 829 n.2 (3d Cir. 2010).

permits recovery of actual damages and statutory damages ranging from $100 to $1,000 in individual actions. *See* 15 U.S.C. § 1693m(a)(1)-(2)(A). It further provides for class actions for EFTA violations, authorizing actual damages and statutory damages of up to $1,000 per class member, with a cap of the lesser of $500,000 or one percent of the net worth of the defendant ATM operator. *See* 15 U.S.C. § 1693m(a)(2)(B).

Plaintiff claims that BBT, which operated an ATM at 614 H St., N.W., Washington, D.C. 2011 ("the ATM"), violated the EFTA. (Am. Class Action Compl. ¶ 11.) Ballard first became aware of this violation when his attorney, based on his observation of the machine on June 9, 2012, informed him that the ATM did not have a fee notice on the outside of the machine. (Def.'s Opp'n to Pl.'s Mot. for Class Certification ("Def.'s Opp'n"), Ex. 3 (Pl.'s Resp. to Interrog. No. 8).) On or about June 24, 2011, Ballard personally observed that the ATM did not have the notice and, on July 8, 2011, he returned to the ATM to withdraw money or, as he described it, "collect evidence." (Def.'s Opp'n, Ex. 4 ("Ballard Dep.") 36:17-37:21; Am. Class Action Compl. ¶¶ 7-11.) Although there was no sign on the ATM's exterior, Ballard was notified, by a clearly visible message on the display screen, that he would be charged a fee and the amount of the fee for the withdrawal. (Ballard Dep. 36:9-36:13.) He chose to proceed anyway and was accordingly charged three dollars. (*Id*. 36:17-36:20.)

Thereafter, on July 21, 2011, he brought this proposed class action, claiming statutory damages for defendant's alleged violation of the EFTA by failing to post the statutorily-mandated notice on its ATM. 15 U.S.C. § 1693m(a)(2). Plaintiff now moves to certify a class of

consumers who were charged a fee for withdrawing money from the ATM between March 1, 2011, and July 21, 2011.[2] (*See* Pl.'s Mot. for Class Certification ("Pl.'s Mot.").)

## ANALYSIS

**I.     LEGAL STANDARD**

Under Federal Rule of Civil Procedure 23 "'[a] class action may be maintained' if two conditions are met: The suit must satisfy the criteria set forth in subdivision (a) (*i.e.*, numerosity, commonality, typicality, and adequacy of representation), and it also must fit into one of the three categories described in subdivision (b)." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 130 S. Ct. 1431, 1437  (2010).  "[A] class plaintiff has the burden of showing that the requirements of Rule 23(a) are met and that the class is maintainable pursuant to one of Rule 23(b)'s subdivisions." *Richards v. Delta Air Lines, Inc.*, 453 F.3d 525, 530 (D.C. Cir. 2006). Plaintiff has sought certification under Rule 23(b)(3).  Therefore, he must also show "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).

The Rule 23(a) factors are arguably satisfied here as numerous courts adjudicating fee-notice cases have explained.  *See, e.g.*, *Pfeffer v. HSA Retail, Inc.*, No. 11-cv-959, 2012 U.S. Dist. LEXIS 73083 (W.D. Tex. May 24, 2012); *Kinder v. Nw. Bank*, 278 F.R.D. 176 (W.D. Mich. Nov. 2, 2011); *Nadeau v. Wells Fargo Bank, N.A.*, No. 10-4356, 2011 U.S. Dist. LEXIS 49648 (Apr. 26, 2011); *Flores v. Diamond Bank*, No. 07 C 6403, 2008 U.S. Dist. LEXIS 91097 (N.D. Ill. Nov. 7, 2008); *Mowry v. JP Morgan Chase Bank, N.A.*, 2007 U.S. Dist. LEXIS 44222

---

[2] For the purposes of this motion, BBT has agreed to treat June 24, 2011, as the date that Ballard (as opposed to his lawyer) initially observed that the ATM lacked a fee notice. (Def.'s Opp'n at 8 n.1.)

(N.D. Ill. June 19, 2007); *Burns v. First Am. Bank*, No. 04 C 7682, 2006 U.S. Dist. LEXIS 92159 (N.D. Ill. Dec. 19, 2006). Therefore, the Court will only touch upon them as relevant before focusing on the more stringent requirements of Rule 23(b)(3).

## II.     COMMONALITY, TYPICALITY, AND PREDOMINANCE

BBT argues that two major differences among the proposed class members' claims prevent Ballard from establishing the commonality or typicality, as required by Rule 23(a), or showing that common issues predominate over individual issues, as required by Rule 23(b)(3).[3]

These three prerequisites for class certification are interrelated. As the Supreme Court recently reaffirmed, "'the commonality[4] and typicality[5] requirements of Rule 23(a) tend to merge" as "[b]oth serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 n.5 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157-58, n. 13 (1982)).

---

[3] Rule 23(a) factors are typically considered separately from and prior to the Rule 23(b)(3) factors. *Kottaras v. Whole Foods Mkt., Inc.*, No. 08-1832, 2012 U.S. Dist. LEXIS 10885, at *13 (D.D.C. Jan. 30, 2012). However, because BBT makes the same argument regarding plaintiff's ability to establish commonality, typicality, and predominance and since plaintiff's response resolves this argument as to all three factors, the discussion can be consolidated.

[4] "Commonality requires that the plaintiff raise claims which rest on 'questions of law or fact common to the class'" *Taylor v. D.C. Water & Sewer Auth.*, 241 F.R.D. 33, 37 (D.D.C. 2007) (quoting Fed. R. Civ. P. 23(a)(2)). Not "every issue of law or fact [need] be the same for each class member." *Bynum v. Dist. of Columbia*, 217 F.R.D. 43, 46 (D.D.C. 2003). Rather, "[t]he commonality test is met when there is at least one issue . . . the resolution of which will affect all or a significant number of the putative class members." *Coleman v. Pension Benefit Guaranty Corp.*, 196 F.R.D. 193, 198 (D.D.C. 2000) (internal quotation marks omitted).

[5] "Typicality requires that the claims of the representative be typical of those of the class." *Taylor*, 241 F.R.D. at 44. Typicality is satisfied when the plaintiffs' claims "arise from the same course of conduct, series of events, or legal theories of other class members." *In re XM Satellite Radio Holdings Sec. Litig.*, 237 F.R.D. 13, 18 (D.D.C. 2006).

Likewise, the predominance requirement of Rule 23(b)(3), which is "similar" to the typicality required by Rule 23(a)(3), "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997). However, the predominance inquiry under Rule 23(b)(3) is "far more demanding" than Rule 23(a)'s commonality requirement. *Id*. at 623-24.

First, BBT contends that the class definition includes some members who cannot assert a claim under the EFTA and therefore the proposed class lacks the requisite commonality, typicality, and predominance. (Def.'s Opp'n at 14-18.) This argument is based upon the meaning of "consumer account" within the EFTA, which includes only personal and not business accounts. 15 U.S.C. § 1693a(6) (defining "consumer" as a "natural person"); *id.* § 1693a(2) (limiting the EFTA's coverage to accounts "established primarily for personal, family, or household purposes"); *see also Ironforge.com v Paychex, Inc.*, 747 F. Supp. 2d 384, 402 (W.D.N.Y. 2010) (distinguishing two types of accounts under the EFTA); *Shames-Yeakel v. Citizens Fin. Bank*, 677 F. Supp. 2d 994, 1007 (N.D. Ill. 2009) (same); *Regatos v. North Fork Bank*, 257 F. Supp. 2d 632, 638 n. 10 (S.D.N.Y. 2003) (finding that even a non-corporate, individual account is not a "consumer account" if it is used for business purposes). This distinction is important here because some unknown portion of the individuals who used the ATM are not "consumers" under the EFTA since (1) some of the transactions involved corporate accounts and (2) some of the transactions involved personal accounts that are used for business, rather than personal, purposes. Therefore, BBT argues, some members of the proposed class do not qualify as "consumers," and consequently their claims will be different. (*See* Def.'s Opp'n at 11-18.)

In response, plaintiff has agreed to limit the class to "consumers" who are covered by the EFTA. (*See* Pl.'s Reply at 9 n. 4.) Therefore individuals who made transactions involving accounts used for business purposes will not be included in the proposed class. Limiting the class to "consumers" thus cures certain problems, but, as discussed in Section III, *infra*, creates practical obstacles that ultimately contribute to the conclusion that a class action is not appropriate here.

Second, BBT argues that, because putative class members used the ATM on different dates, the Court will need to conduct a case-by-case inquiry into whether the fee notice was on the machine, and that this precludes a finding of commonality, typicality, or predominance. (Def.'s Opp'n at 18.)

This poses no problem for the Rule 23(a) requirements. "The existence of factual distinctions between the claims of putative class members will not preclude a finding of commonality," *Chang v. United States*, 217 F.R.D. 262, 270 (D.D.C. 2003), because a common legal question remains: whether the withdrawal fee imposed at the ATM violated the EFTA. *See Kinder*, 278 F.R.D. at 183-84; *Burns*, 2006 U.S. Dist. LEXIS 92159, at *24-27. Nor does it destroy typicality, since Ballard's claim "arise[s] from the same course of conduct, series of events, or legal theories as the claims of other class members." *In re XM Satellite Radio Holdings Sec. Litig.*, 237 F.R.D. 13, 18 (D.D.C. 2006).

However, this argument poses a more serious challenge to the predominance inquiry. Initially, Ballard sought to certify a class of "all persons who, in the twelve (12) months prior to the filing of Plaintiff's complaint, made an EFT [(electronic funds transfer)] at one of Defendant's ATMs located at 614 H Street, N.W., Washington, DC 20001, and were charged a "terminal owner fee" in connection with the transaction." (Pl.'s Mot. at 4.) Plaintiff has since

6

narrowed this definition to include only those who used the ATM between March 1, 2011 and July 21, 2011, since he concedes that he cannot controvert defendant's evidence that the bank was compliant during the February/March 2011 time period and that he has no evidence that defendant was out of compliance prior to February 2011. (*See* Pl.'s Reply at 12 n.8.) However, given this concession, the use of the March 1, 2011, start date also appears to have no factual basis.

Moreover, the unclear timeline for the alleged EFTA violation distinguishes this suit from other fee-notices cases (the majority of which certify a class for settlement purposes only), since common proof may not resolve the factual issues on a classwide basis here.[6] For consumers who used the ATM between June 24, 2011 and July 21, 2011, common proof on whether the required notice was on the ATM will resolve one factual question in this case. *See Kinder*, 278 F.R.D. at 183; *Flores*, 2008 U.S. Dist. LEXIS 91097, at *6-7. But, for consumers who used the ATM between March 1, 2011, and June 9, 2011, common proof may not resolve the factual question of when the "on-machine" notice ceased to be affixed to the ATM since it is unknown (and perhaps unknowable) whether the fee notice was on the ATM during that time after March 1, 2011. It is uncontested by plaintiff (*see* Pl.'s Reply at 12 n.8) that defendant's evidence established the presence of all required notices in February and March of 2011. (*See* Def.'s Opp'n, Ex. 2 (Decl. of Devaughn Moore) ¶¶ 2-3.) Given the extremely low likelihood of class members coming forward (*see infra* Section III) with information about whether the notice

---

[6] Although "[t]here is no definitive test for determining whether common issues predominate," the predominance requirement is "met when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class members' individual position." *In re Vitamins Antitrust Litig.*, 209 F.R.D. 251, 262 (D.D.C. 2002) (quotation marks omitted); Charles A. Wright, *et al.*, *Fed. Practice & Procedure* § 1785 ("[I]t is necessary for the court to consider what will have to be proved at trial and whether those matters can be presented by common proof or whether individual proof will be required.").

7

was on the ATM between March 1, 2011 and June 9, 2011, it may never be possible to resolve this factual question for consumers who used the ATM during that time.[7]  Consequently, it is far from clear that common issues predominate.  The Court, however, need not resolve the issue of predominance because, as explained below, a class action suit is simply not a superior method of litigating this case.

### III.   SUPERIORITY OF CLASS ACTION

In addition to predominance, Rule 23(b)(3) requires that class treatment be superior to other methods of adjudicating a controversy.[8]  This prerequisite is met "where common questions of law or fact permit the court to consolidate otherwise identical actions into a single efficient unit."  *Bynum*, 214 F.R.D. at 39-40.  The factors to be considered are:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

In reality, BBT's point regarding the EFTA's distinction between business and personal account-holders is more appropriately analyzed under Rule 23(b)(3), for it is actually a challenge

---

[7] The length of BBT's alleged non-compliance with the EFTA is relevant to establishing liability and calculating statutory damages. *See* 15 U.S.C. § 1693m (b)(2) (directing courts determining damage awards in class actions under subsection (a)(2)(B) to consider "the frequency and persistence of noncompliance, the nature of such noncompliance, the resources of the defendant, the number of persons adversely affected, and the extent to which the noncompliance was intentional").

[8] Under this rule, "a class action [must be] superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. Pro. 23(b)(3).

to the superiority of a class action as a vehicle for litigation. That is, defendant argues that the proposed class action is simply not manageable because of the logistical difficulty of identifying and notifying putative class members. While other courts have dealt with similar arguments in fee notice cases, the distinct facts of this case make it even more challenging and less efficient to litigate this case as a class action.

To adjudicate this case, it is absolutely essential to communicate with the individuals who used the ATM. In order to determine if an ATM-user is a "consumer" and therefore within the putative class, the Court must make certain limited individualized inquiries of each class member. If this cannot be done, the Court will not know if the ATM-user was a "consumer" and therefore cannot ascertain the size of the class. In addition, without this information, it cannot determine statutory damages. *See* 15 U.S.C. § 1693m(b)(2) (determination of damages to be based, in relevant part, on "the number of persons adversely affected").

Clearly, it is not feasible to individually identify class members.[9] BBT, like other ATM-operators, is not permitted to keep records that would enable it to identify ATM-users or to determine which ATM-users are "consumers" within the meaning of the EFTA. (Def.'s Opp'n, Ex. 1 ("Piper Decl.") ¶ 5.) The only information it retains is a six-digit identification number for the ATM-user's bank (a "Bank Identification Number") and a ten-digit number that the ATM-user's bank can use to identify the account-holder. (*Id.* ¶ 6.) Therefore, BBT would have to contact each bank—of which there may be hundreds if not thousands— and each bank would have to search their records to identify the particular ATM-user. (*Id.* ¶¶ 5, 7.) Even if this could

---

[9] The ability to identify and notify class members is relevant to the propriety of certification under Rule 23(b)(3). *Burns*, 2006 U.S. Dist. LEXIS 92159, at *36; *Williams v. Glickman*, No. 95-1149, 1997 U.S. Dist. LEXIS 1683, at *13 (D.D.C. Feb. 14, 1997). While individual notice is not absolutely required, members of a class certified under Rule 23(b)(3) are entitled to "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

9

be acceptable, each ATM-user would then have to be contacted and questioned to determine whether their account was a "consumer" account used for personal purposes. Multiple courts, including *Flores*, *Nadeau*, and *Mowry*, have found that this is not a reasonable method for providing notice and, in fact, the Court has yet to find any case in which this method has actually been attempted.

As a result, notice by publication is the only viable alternative, but it too is fraught with difficulties. First, the ATM is located at the Verizon Center in the middle of downtown Washington, D.C., which means that the users likely include tourists and visitors from all over the world. They are not likely to return to the ATM to see a notice of pending litigation posted on the machine nor are they likely to see a notice of the class action in a local publication. In that sense, this case is distinct from cases like *Kinder* or *Flores*. Second, these notices provide a mechanism for class members to opt out, but do not require class members to actually participate in the suit. *See, e.g.*, Joint Mot. to Provide Class Notice in the Form Agreed to by both Parties as Discussed at the May 7, 2009 Status Conf., *Flores v. Diamond Bank*, 07 C 6403 (N.D. Ill. May 27, 2009) (Dkt. No. 99).) Even if the Court were to use an "opt-in" notice, there is no reason to believe that anyone would come forward, particularly as the payout to each class member is likely to be so miniscule. *See, e.g.*, *Flores*, 2008 U.S. Dist. LEXIS 91097, at *10-11 (noting that the statutory cap imposed on class actions means that class members would recover less than they would if bringing individual actions); *Mowry*, 2007 U.S. Dist. LEXIS 44222, at *10 (estimating damages at $0.03 per class member). Moreover, as Judge Magnuson recognized in *Nadeau*, class members may not come forward because they received the on-screen notice and agreed to the transaction fee, and thus they have no reason to feel particularly aggrieved. 2011 U.S. Dist. LEXIS 49648, at *12. If ATM-users do not come forward to identify themselves as

10

"consumer" account-holders, the suit cannot proceed because the Court will have no way of knowing which of the 2,000 transactions per month are attributable to "consumers."[10] Moreover, if users from March 2011 through June 9, 2011 do not come forward, the Court will not be able to resolve the key factual dispute for each putative class member of whether the fee notice was on the ATM during that time.

Ballard argues that, even if a small percentage (only 25%) of the estimated 2,000 ATM-users[11] in one month were identified as consumers, its damage award would still exceed the statutory maximum.[12] (Pl.'s Reply at 9 n. 5.) But the premise of plaintiff's argument is both factually and legally flawed. This hypothetical calculation assumes that the putative class members would each receive the statutory maximum of $1,000, which is highly debatable. Even if a violation of the "on-machine" requirement could be proven for the specific date in question, it is uncontested that these consumers received the statutorily-required, more detailed "on-screen" notice that told them of the amount of the transaction fee, but nonetheless, they chose to proceed with the transaction and incur the fee. Therefore, even if statutory damages are warranted, it is difficult to understand the basis for plaintiff's overly optimistic assumption that

---

[10] Contrary to plaintiff's suggestion (Pl.'s Reply at 9-10), the problem is not simply that asking the individual ATM-users one question is burdensome. *See Wells v. McDonough*, 188 F.R.D. 277, 279 (N.D. Ill. 1999) (explaining that need to ask ATM-users one question was not a reason to deny class certification); *see also Chisolm v. TranSouth Fin. Corp.*, 194 F.R.D. 538, 551-52 (E.D. Va. 2000) (distinction between personal and business purchases not a bar to consumer class, as statutory damages for actual consumers could be ascertained at a later time). Rather, the problem is identifying the ATM-users and determining whether they properly belong in the statutory class.

[11] Plaintiff estimates that there are 2,000 *transactions* per month. (Pl.'s Reply at 2.) The Court recognizes that some of these may be made by the same person, meaning that the total number of ATM-users per month is likely less than 2,000.

[12] Section 1693m(a)(2)(B)(ii) limits "the total recovery . . . in any class action or series of class actions arising out of the same failure to comply by the same person [to] not be more than the lesser of $500,000 or 1 per centum of the net worth of the defendant."

he can recover the maximum amount. *See Nadeau*, 2011 U.S. Dist. LEXIS 49648, at *12-13 (explaining that "[a] court may determine that statutory damages, in the case of the evidence of an on-screen agreement to the fee and the extremely small amount of actual damages, are de minimis").[13]

While the many courts that have grappled with the EFTA cases have arrived at different conclusions about whether a class action is superior, they did not confront the myriad difficulties presented here. *See, e.g.*, *Kinder*, 278 F.R.D. at 183-87; *Mabary v. Hometown Bank, N.A.*, No. 4:10-cv-3936, 2011 U.S. Dist. LEXIS 134437, at *10-11 (S.D. Tex. Nov. 21, 2011);[14] *Flores*, 2008 U.S. Dist. LEXIS 91097, at *6-7; *Burns*, 2006 U.S. Dist. LEXIS 92159, at *40-41.[15] The majority of certifications were for settlement purposes only and involved a definite time period for the violation. As the court in *Pfeffer* pointed out in denying class certification, the few courts that have certified classes prior to settlement have yet to resolve the practical problems presented in a case such as this. 2012 U.S. Dist. LEXIS 73083, at *10-11 & n.3; *see also Nadeau,* 2011 U.S. Dist. LEXIS 49648, at *11-14 (declining to certify due to lack of superiority).

---

[13] The fact that the statutory damages may well be de minimis is not necessarily a basis for denying certification, since the statute imposes no minimum recovery for class members. 15 U.S.C. § 1693m(a)(2)(B)(i). However, the likelihood of de minimus damages may make it preferable for consumers to litigate their claims as individual actions, for which the minimum recovery is $100. 15 U.S.C. § 1693m(a)(2)(A); *see Nadeau*, 2011 U.S. Dist. LEXIS 49648, at *13.

[14] The *Mabary* class certification order was conditionally vacated for reasons unrelated to the propriety of certification and the docket does not show that notice was ever given to class members. *See* Tr. of Mot. to Dismiss Hrg. 6:20-12:16, *Mabary v. Hometown Bank, N.A*., No. 4:10-cv-3936 (S.D. Tex. Dec. 6, 2011) (Dkt. No. 57).

[15] *Burns* is also distinguishable because the plaintiffs in that case received incorrect information on the "on-screen" fee notice and therefore, unlike plaintiff here, never received the correct information prior to completing the transaction. *Id*., at *21 n.4, 25. But even there the Court recognized that notice by publication would be an unlikely method to "encourage a large number of individuals to come forward and claim what likely will be a minimal award." *Id*., at *38.

Ballard's response is that all ATMs are used for both types of accounts and so the inability to identify "consumers" within ATM-users cannot be a bar to certification because it would conflict with the statute's provision for class actions. (Pl.'s Reply at 6.) However, he offers no authority for the suggestion that Congress intended the EFTA to authorize class actions that do not satisfy the superiority requirement of Rule 23(b)(3).

Given plaintiff's concession that notice by publication is the only practical means for finding class members and since he recognizes that class members will need to be quizzed as to whether they engaged in a consumer transaction at a time when there was no notice on the machine (as opposed to the screen), it is highly likely that the class could, at best, consist of a handful of consumers, or at worst, be a class of one—plaintiff. Moreover, it is undisputed that each of the prospective class members proceeded with the transaction despite having received the required notice on the screen and that the potential class recovery will be de minimus, especially in comparison to the petition for fees and costs that will ultimately be filed after lengthy and costly litigation. Given these substantial difficulties, *see Mowry*, 2007 U.S. Dist. LEXIS 44212, at *15, the Court concludes that plaintiff has failed to satisfy Rule 23(b) and class certification is denied.

## CONCLUSION

For the foregoing reasons, the Court denies plaintiff's motion for class certification. A separate order accompanies this Memorandum Opinion.

>                     /s/
> ELLEN SEGAL HUVELLE
> United States District Judge

Date:   June 11, 2012